UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| YARNISE HINES,<br><br>    Plaintiff,<br><br>v.<br><br>THE CURATORS OF THE UNIVERSITY<br>OF DETROIT MERCY, d/b/a THE UNIVERSITY<br>OF UNIVERSITY OF DETROIT d/b/a<br>UNIVERSITY OF DETROIT MERCY SCHOOL<br>OF DENTISTRY, DEAN MERT AKSU,<br>Dr. JOHN RYDER, and JULIETTE C. DANIELS.<br><br>    Defendants. | CASE NO.:<br><br>HON: |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

  Plaintiff, **YARNISE HINES**, ("Plaintiff") for her claims against Defendants, THE CURATORS OF THE UNIVERSITY OF DETROIT MERCY, d/b/a THE UNIVERSITY DETROIT MERCY d/b/a UNIVERSITY OF DETROIT MERCY SCHOOL OF DENTISTRY, DEAN MERT AKSU, DR. JOHN RYDER, and JULIETTE C. DANIELS.

("Defendant(s)") states as follows:

1

## I. TABLE OF CONTENTS.

| | | |
|---|---|---|
| I. | TABLE OF CONTENTS. | 2 |
| II. | PARTIES | 3 |
| III. | JURISDICTION AND VENUE. | 3 |
| IV. | COMMON ALLEGATIONS. | 4-5 |
| V. | COUNTS. | 5-12 |
| | COUNT 1: VIOLATION OF ACADEMIC POLICIES (SOD) | 5-6 |
| | COUNT 2: BREACH OF THE ACADEMIC AGREEMENT (SOD). | 6 |
| | COUNT 3: BREACH OF THE READMISSION AGREEMENT (SOD) | 7 |
| | COUNT 4: VIOLATION OF FEDERAL DUE PROCESS CLAUSE (DEFENDANTS) | 7-8 |
| | COUNT 5: VIOLATION OF ADA-DESPERATE TREATMENT (DEFENDANTS) | 8-10 |
| | COUNT 6: BREACH OF DUTIES (SOD). | 10 |
| | COUNT 7: PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE (SOD and DEAN) | 10-11 |
| VI. | REQUEST FOR RELIEF. | 11 |
| VII. | DEMAND FOR TRIAL BY JURY. | 12 |

II. **PARTIES**

1. Yarnise Hines is an individual who currently resides in Detroit, Michigan and is domiciled in and is a citizen of the State of Michigan.
2. THE CURATORS OF THE UNIVERSITY OF DETROIT MERCY, d/b/a THE UNIVERSIT OF DETROIT MERCY d/b/a UNIVERSITY OF DETROIT MERCY SCHOOL OF DENTISTRY (SOD), a nonprofit corporation of the State of Michigan, (the "Curators") is a private university, operated under State laws by the State of Michigan and receiving funding from the State of Michigan as well as Federal funds. Its primary address is 4001 West McNichols Road, Detroit, Michigan 48221.
3. Dean Mert Aksu is the Dean of the SOD employed at 4001 West McNichols Road, Detroit, Michigan 48221 and who resides and is domiciled in the State of Michigan.
4. Dr. John Ryder is the Associate Dean for Academic Administration at the SOD employed at 4001 West McNichols Road, Detroit, Michigan 48221 and who resides and is domiciled in the State of Michigan.
5. Juliette C. Daniels is the Associate Dean of Student Services and Enrollment Management at the SOD, employed at 4001 West McNichols Road, Detroit, Michigan 48221 and who resides and is domiciled in the State of Michigan.
6. Each natural person is sued in their official and individual capacities.

III. **JURISDICTION AND VENUE**

7. This action is brought under 42 U.S.C. Sec. 1983, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, Title VI of the Civil Rights Act of 1964, as amended through the Civil Rights Restoration Act of 1987, and the Federal Due Process Clause of the Fourteenth Amendment.
8. Jurisdiction is based upon 28 U.S.C. Sec. 1331 (Federal Question).
9. Ms. Hines further invokes the supplemental jurisdiction of this Court under 28 U.S.C. Sec. 1367(a) to adjudicate claims arising under state law.
10. Venue in this District is proper under 28 U.S.C. Sec. 139l(b).

IV. **COMMON ALLEGATIONS**

11. Ms. Hines was a student in good academic standing until she suffered complications with her mental health and the medication designed to regulate it.
12. Her mental health challenges were fully disclosed to the SOD at the time of application to the (SOD) and fully disclosed to the time of acceptance.
13. Ms. Hines's mental health is considered a disability and she received accommodations to assist in her matriculation at the SOD.
14. In response to the mental health challenges, Ms. Hines was provided with accommodations such as being allowed additional time for test taking and being allowed to take tests in private rooms, separated from the rest of the class.
15. After admission, Ms. Hines started having challenges to related to the efficacy of her medication to designed to regulate her mental health.
16. For whatever biological reasons, the medication that Ms. Hines was prescribed was no longer effective.
17. The medication regime that had been previously effective in regulating her mental health was no longer effective in providing the mental health regulation needed to effectively function in life and in school.
18. When the dosages to which Ms. Hines had become accustomed were no longer effective in creating the mental balance that she needed to function, the process to recreate this balance did not produce immediate results.
19. It had been and is a lengthy process to ascertain the correct cocktail of medications to balance her specific mental health challenges.
20. Based on the imbalances that Ms. Hines was experiencing, she needed a new cocktail of medications.
21. The mental health challenges caused difficulty navigating the daily requirements associated with the degree program.
22. In Ms. Hines's condition, she was unable to function normally or properly, and it negatively impacted her schoolwork.
23. When these mental health challenges started to occur, they were immediately communicated to the SOD.

24. Although these issues were communicated during the application process, the SOD did not provide accommodations when complications with the medication began to occur and caused a decrease in academic performance that was consistent with Ms. Hines disability.
25. Continued communication and requests for relief concerning the issue were not effective.
26. Again, Ms. Hines was forthcoming in explaining her disability/mental health challenges at the time of application and acceptance and when this issue arose.
27. Ms. Hines had a documented disability with the SOD.
28. Ms. Hines experienced great difficulty in completing courses DOD 8200 & DOD 8201.
29. Upon suffering with medication issues and mental health issues, Ms. Hines then started battling with social isolation after learning that students were being told by administration to not be friends with her.
30. When Dr. Michele Wheater was appointed in 2021, the impact of Ms. Hines' mental health issues worsened and further negatively affected Ms. Hines' performance.
31. Ms. Hines did not feel safe under these conditions in this academic environment.
32. The conclusion that Ms. Hines lacks fitness for the profession does not accurately describe her performance and capacity especially in the face of her mental health diagnosis.
33. Ms. Hines' performance suffered.
34. Although remediation had become common practice of SOD as a solution to students who did not score highly, Ms. Hines was not given the chance to remediate the final exam.
35. Being alienated in this specific way was undeniably a contributor to her dismissal.
36. The letter denying appeal is dated March 6, 2023.

V.   COUNTS.

   COUNT 1:   VIOLATION OF ACADEMIC POLICIES (SOD).

37. All preceding allegations are hereby incorporated by reference.
38. Students are protected from deviation from information advertised in the following documents: registration materials, manuals, course catalogues, bulletins, circulars, regulations, class syllabi, student codes, and handbooks.
39. Such rights include, without limitation, (1) the right to a continuous contract during a period of enrollment, without a change in degree requirements, (2) the right to retain property and copyright for results of research, artistic creation and innovation unless contracts exist, (3) the

right to participate in programs and services in accordance with advertised program objectives, (4) the right to be evaluated in accordance with advertised curriculum evaluation criteria, and (5) the right to be evaluated with criteria in line with advertised course objectives.

40. These documents may be binding implied-in-fact contracts.

41. Furthermore, verbal contracts are binding in Higher Education settings.

42. Institutional documents are still contractual regardless of whether they have a disclaimer.

43. According to the Academic and Non-Academic Policies

44. SOD should not discriminate against students in a manner that is inconsistent with the Title IX of the Education Amendments of 1972, Section 504 of the rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964.

45. The SOD violated due process and Ms. Hines's rights under Title IX leading to Ms. Hines's Dismissal from the SOD and the denial of Re-Admission Request.

46. The SOD DDS Program is an accredited program and is required to adhere to the accreditation standards require standards of diversity, cultural competence, institutional climate, curriculum diversity, educational environment, and structural diversity.

47. The SOD violated due process and Ms. Hines's rights leading to Ms. Hines's Dismissal from the SOD and the denial of Ms. Hines's Re-Admission Request.

48. Ms. Hines has incurred damages due to foregoing violations including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

**COUNT 2:    BREACH OF THE ACADEMIC AGREEMENT (SOD).**

49. All preceding allegations are hereby incorporated by reference.

50. As a matter of law, students and institutions of higher education formed a contractual relationship.

51. Institutions of higher education are responsible to ensure that contracts, including those implied and verbal, are fair, in good faith, and not unconscionable.

52. Ms. Hines had (and has) a valid express and/or implied contract with the SOD, whereby Ms. Hines agreed to complete the SOD's pre-doctoral program requirements and pay tuition and the SOD would provide Ms. Hines with an education and a degree/certificate upon completion of program requirements (the "Academic Agreement").

53. The Academic Policy Violations leading to Ms. Hines's Dismissal from the SOD and the denial of Ms. Hines's Re-Admission Request each constitute a breach (collectively, the "Breaches" and each a "Breach") by the SOD of the Academic Agreement.

54. Ms. Hines's has incurred damages due to foregoing Breaches including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

**COUNT 3: BREACH OF THE READMISSION AGREEMENT (SOD).**

55. All preceding allegations are hereby incorporated by reference.

56. As a matter of law, students and institutions of higher education formed a contractual relationship.

57. Institutions of higher education are responsible to ensure that contracts, including those implied and verbal, are fair, in good faith, and not unconscionable.

58. As a matter of law, the Readmission Agreement constitutes a valid and binding contract.

59. The Academic Policy Violations leading to Ms. Hines's dismissal from the SOD and the denial of Ms. Hines's Re-Admission Request each constitute a breach (collectively, the "Breaches" and each a "Breach") by the SOD of the Readmission Agreement.

60. Ms. Hines has incurred damages due to foregoing Breaches including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

**COUNT 4:   VIOLATION OF FEDERAL DUE PROCESS CLAUSE (DEFENDENTS).**

61. All preceding allegations are hereby incorporated by reference.

62. Dismissal of a student by a public education institution is a deprivation within the Fourteenth Amendment of the United States Constitution.

63. The SOD is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by due process rights under the Fourteenth Amendment to the United States Constitution (the "Federal Due Process Clause").

64. Furthermore, Ms. Hines has protected liberty and/or property interests in her investment in the program at the SOD, her professional reputation, her earning ability and potential, and the value

of her education and her privacy, as well as a liberty interest in freedom from arbitrary and wanton intrusions into her personal and professional life.

65. An exclusion from a public university, in whole or in part, for failure to comply with disciplinary and/or academic standards is within the protection of the Federal Due Process Clause.

66. Ms. Hines's right to due process were denied by Defendants failing to apply fair and impartial procedural policies.

67. Ms. Hines's right to due process were denied by Defendants' commission of the Academic Policy Violations.

68. Ms. Hines's rights to due process were denied by Defendants' commission of the Breaches.

69. Each of the forgoing due process violations, as well as the Dismissal, (collectively, the "Federal Due Process Violations" and each a "Federal Due Process Violation") constitute a deprivation of Ms. Hines's due process rights under the Federal Due Process Clause.

70. The SOD is a state actor.

71. All individual Defendants acted under color of state law.

72. All individual Defendants knew or should have known that their actions complained of herein violated clearly established Federal rights.

73. All individual Defendants worked individually and/or in conspiracy to violate Ms. Hines's rights complained of herein.

74. Ms. Hines has incurred damages due to the Federal Due Process Violations including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

**COUNT 5:   VIOLATION OF ADA-DESPERATE TREATMENT (DEFENDENTS).**

75. All preceding allegations are hereby incorporated by reference.

76. The primary federal laws that protect people with disabilities from discrimination in higher educational settings like colleges and universities are (1) the Americans with Disabilities Act of 1990, amended in 2008, (2) Section 504 of the Rehabilitation Act of 1973, and (3) ADA Amendments Act of 2008 (collectively, the "ADA"). *See* 42 U.S.C.A. §§ 12101-12300; *See* also 29 U.S.C.A. §§ 701-796.

77. The ADA guarantees equal opportunity for individuals with disabilities in public and private sector services and employment. *See* 42 U.S.C. §§ 12111-12, 12131-32.

78. Generally, the ADA makes it illegal to discriminate against someone because he or she has a disability. *See* 42 U.S.C. § 12101.

79. Specifically, Title II of the ADA prohibits all state and local governmental entities, including public colleges and universities, from discriminating against people with disabilities. *See* 42 U.S.C. §§ 12131-32.

80. Section 504 prohibits "any program receiving federal financial assistance" from discriminating against an individual because of her or her disability. *See* 29 U.S.C. § 794.

81. Section 504 covers any college or university that receives direct or indirect federal financial assistance, including those that accept students who receive federal financial aid. *See* 29 U.S.C. § 794.

82. Ms. Hines is a qualified individual with a disability resulting from her Educational Challenges ("Qualified Disability"). *See* 29 U.S.C. § 794.

83. The Academic Policy Violations, the Academic Agreement Breaches, the Readmission Agreement, the Federal Due Process Violations, and the State Due Process Violations, as well as the resulting Dismissal and the SOD's denial of Ms. Hines's Readmission Request, were in whole or in part each example of and the result of Defendants' disparate and discriminatory treatment of Ms. Hines on the basis of her Qualified Disability (as further defined herein) (the "ADA Disparate Treatment Violations").

84. Ms. Hines suffers from the Qualified Disability.

85. Students without Ms. Hines's disability were not treated in such a manner.

86. The circumstances of Ms. Hines's Dismissal have cast her as a social outcast to her fellow student colleagues as well as further promoted additional negative branding to Ms. Hines's reputation in the eyes of other SOD Faculty.

87. The forgoing ADA Disparate Treatment Violations are examples of types of discriminatory and disparate treatment that Ms. Hines received by the Defendants in violation of Ms. Hines's rights under the ADA; treatment which contributed in whole or in part and/or otherwise served as the basis of Ms. Hines's Dismissal as well as the SOD's denial of Ms. Hines's Readmission Request.

88. Ms. Hines has incurred damages due to foregoing violations including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

89. The SOD is a state actor.

90. The individual Defendants acted under color of state law.
91. The individual Defendants each knew or should have known that their actions complained of herein violated clearly established Federal rights.
92. The Defendants worked individually and/or in conspiracy with the SOD to violate Ms. Hines's rights complained of herein.

**COUNT 6: BREACH OF DUTIES (SOD).**

93. Ms. Hines incorporates the above and below paragraphs as fully set forth herein.
94. The SOD owed Ms. Hines a duty under the Academic Policies, the Academic Agreement, the Readmission Agreement, the ADA, Title VI, and via their student/teacher relationship, including, without limitation, to carry out the proceedings and procedures surrounding her Dismissal and Readmission Request.
95. Based on the Academic Policy Violations, the Academic Agreement Breaches, the Readmission Breaches, the Federal Due Process Violations, the State Due Process Violations, the ADA Disparate Treatment Violations, Title VI Disparate Treatment Violations, as well as the Dismissal and the SOD's denial of Ms. Hines's Readmission Request, the SOD, by and through the individual Defendants, intentionally, knowingly, and willfully violated duties owing to Ms. Hines.
96. Ms. Hines has incurred damages due to foregoing breach of duty violations (the "Duty Violations") by the SOD including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

**COUNT 7: PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE (SOD and DEANS).**

97. Ms. Hines incorporates the above and below paragraphs as fully set forth herein.
98. Ms. Hines determinably relied on the forgoing representations.
99. The SOD knew and/or should have reasonably known that Ms. Hines would so rely.
100. The SOD should be equitably estopped from denying the exitance of the Readmission Agreement.

101. Ms. Hines has incurred damages due to foregoing detrimental reliance on the SOD and Deans including, without limitation, tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and other non-pecuniary damages.

## VI. REQUEST FOR RELIEF

**WHEREFORE,** Ms. Hines requests that the Court:

102. Enter Judgment in Ms. Hines' favor as to all claims set forth in each Count herein.

103. Issue an Order vacating and/or overturning the Dismissal.

104. Issue an Order compelling the SOD to immediately allow Ms. Hines to return to the SOD as student.

105. Issue an Order preventing the Defendants from retaliating, harassing and/or discriminating against Ms. Hines.

106. Issue an award for any and all present and future damages incurred owing to Defendants' actions in an amount to be determined; provided, however, that if Ms. Hines is not readmitted to the SOD, in an amount not less than $21,874,696.00 (a figure which based on the average annual salary of dentist in Detroit, Michigan of $193,930.00 (the "Average Salary") with an annual increase of 3% over 50 years; but this figure does not include yearly bonuses and/or profits) plus $16,387,308 (a figure which based on the average annual income of owner-solo practitioner dentist in Kansas City, Missouri of $370,130.00 less the Average Salary with an annual increase of 3% over 45 years) for an aggregate amount of not less than $38,262,005.00; any and all available special damages, punitive damages, treble damages and other relief under State and/or Federal law; as well as payment of the amount that the SOD was unjustly enriched, including tuition and fees, payment for services performed, any other enrichment accrued to the SOD as a result of Ms. Hines's attendance; and reasonable attorney fees, costs and expenses; and,

107. For all other just and proper relief.

**VII.    DEMAND FOR TRIAL BY JURY.**

Ms. Hines hereby requests a trial by Jury on all matters so triable.

Date:    January 8, 2024.

*Respectfully Submitted*,

/s/ Christopher L. Sinclair

_____

CHRISTOPHER L. SINCLAIR
Attorney at Law
35560 Grand River Ave
Farmington Hills, Michigan 48335
Telephone: 313.434.8486
E-mail: clsinclair99@gmail.com